## MAYOR OF CAMBRIDGE & others[1] *vs.* SECRETARY OF THE COMMONWEALTH.

Suffolk. March 7, 2002. - April 8, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Elections,* Representative district. *Constitutional Law,* Elections, Apportionment of representation, Equal protection of laws, Redistricting, Representative districts. *Federal Voting Rights Act.*

Discussion of the constitutional and statutory requirements involved in the division of the Commonwealth into 160 representative districts. [478-480]

Statement of the relevant characteristics of the 2001 redistricting plan for the 160 representative districts of the House of Representatives in the Commonwealth. [480]

Statement of alternative plans to St. 2001, c. 125, § 1 (the redistricting statute) presented by plaintiffs seeking to invalidate the 2001 redistricting plan for the 160 representative districts of the House of Representatives in the Commonwealth. [480-481]

Statutes 2001, c. 125, § 1 (the redistricting statute), which established new representative districts of the House of Representatives in the Commonwealth, did not violate the directive of art. 101 of the Amendments to the Constitution of the Commonwealth, because it placed portions of the city of Cambridge in six representative districts when all of the requirements of art. 101 could have been met with fewer divisions, where the Legislature's actions in formulating the redistricting plan were reasonably justified by its attempt to conform with the criteria laid out by Federal and State law, including the equal protection clause of the Fourteenth Amendment to the United States Constitution and the Federal Voting Rights Act, and did not clearly violate those laws. [481-487]

CIVIL ACTION commenced in the Supreme Judicial Court for the Commonwealth on November 19, 2001.

After referral to the Supreme Judicial Court for the county of Suffolk, the action was returned to the Commonwealth court by *Greaney,* J., to proceed on an expedited basis.

*Sam Hirsch,* of the District of Columbia (*Nancy E. Glowa & Scott P. Lewis* with him) for the plaintiffs.

[1]The city council of Cambridge and eleven registered voters of Cambridge.

*Peter Sacks*, Assistant Attorney General (*Lawrence S. Di-Cara*, Special Assistant Attorney General, with him) for Secretary of the Commonwealth.

The following submitted briefs for amici curiae:

*Joseph S. Berman* for Cambridge Democratic City Committee.

*Anne-Marie M. Hyland & Lauren F. Goldberg* for the town of Watertown.

*Nadine Cohen* for Massachusetts Black Legislative Caucus.

COWIN, J. The plaintiffs — the mayor, the city council, and eleven registered voters of the city of Cambridge — seek relief in the nature of mandamus against the defendant, Secretary of the Commonwealth, which would invalidate the 2001 redistricting plan for the 160 representative districts of the House of Representatives in the Commonwealth. The plaintiffs maintain that St. 2001, c. 125, § 1 (the redistricting statute), which establishes the new districts, is unconstitutional under art. 101, as amended by arts. 109, 117, and 119 of the Amendments to the Constitution of the Commonwealth, because it places portions of Cambridge in six representative districts when all of art. 101's requirements could have been met with fewer divisions.[2] We conclude that the plaintiffs have failed to demonstrate that the redistricting statute unduly departs from the directive in art. 101 to respect the political subdivisions during the redistricting process. Accordingly, there is no basis for requiring the Legislature to draw a new redistricting plan, and the defendant is entitled to judgment.[3]

1. *Procedural background.* Section 2 of the redistricting statute vests jurisdiction in the Supreme Judicial Court for "any petition

---

[2]Article 101 of the Amendments to the Constitution of the Commonwealth, as amended, states, in part, that the Legislature shall "divide the Commonwealth into one hundred and sixty representative districts of contiguous territory so that each representative will represent an equal number of inhabitants, as nearly as may be; and such districts shall be formed, as nearly as may be, without uniting two counties or parts of two or more counties, two towns or parts of two or more towns, two cities or parts of two or more cities, or a city and a town, or parts of cities and towns, into one district. Such districts shall also be so formed that no town containing less than twenty-five hundred inhabitants . . . shall be divided."

[3]We acknowledge the amicus briefs of the town of Watertown, the Massachusetts Black Legislative Caucus, and the Cambridge Democratic City Committee.

for a writ of mandamus relative to the establishment of 160 representative districts under section 1 [of this act]." See also art. 101, §§ 1 and 3.

Accordingly, the plaintiffs filed their complaint in this court. The case was referred to the county court to be prepared for disposition by this court "as promptly as possible." The parties filed a statement of agreed facts. A single justice then ordered that the case proceed in this court on an expedited basis.

2. *Constitutional and statutory requirements.* In dividing the Commonwealth into the mandated 160 representative districts, the Legislature must conform to State and Federal constitutional and statutory requirements. Article 101 requires that the division of the Commonwealth into 160 representative districts by the Legislature shall result in the districts being "[1] of contiguous territory [2] so that each representative will represent an equal number of inhabitants, as nearly as may be [population equality]; [3] and such districts shall be formed, as nearly as may be, without uniting two counties or parts of two or more counties, two towns or parts of two or more towns, two cities or parts of two or more cities, or a city and a town, or parts of cities and towns, into one district [territorial integrity] [; and 4 s]uch districts shall also be so formed that no town containing less than twenty-five hundred inhabitants . . . shall be divided." *Merriam* v. *Secretary of the Commonwealth*, 375 Mass. 246, 248 (1978), quoting art. 101, § 1. See *Brookline* v. *Secretary of the Commonwealth*, 417 Mass. 406, 413-414 (1994).

The equal protection provision of the Fourteenth Amendment to the United States Constitution independently imposes an equal representation requirement. See *Reynolds* v. *Sims*, 377 U.S. 533, 577 (1964). The United States Supreme Court has stated that an apportionment plan with a maximum population deviation between the largest and smallest districts of under ten per cent is a minor deviation that need not be justified by the State. *Voinovich* v. *Quilter*, 507 U.S. 146, 161 (1993), quoting *Brown* v. *Thomson*, 462 U.S. 835, 842-843 (1983). See *Brookline* v. *Secretary of the Commonwealth, supra* at 413-414, and cases cited. The maximum population deviation is calculated by determining the range of population deviation between the largest and smallest districts from the ideal district. *Black Political Task Force* v. *Connolly*, 679 F. Supp. 109, 114 (D. Mass. 1988).

The Federal Voting Rights Act of 1965, 42 U.S.C. §§ 1973 (a) et seq. (1994), must also be considered by the Legislature in implementing a redistricting plan. See *Brookline* v. *Secretary of the Commonwealth, supra* at 414-415. The Act "prohibits the creation of electoral districts that tend to dilute the voting power of a minority population by dividing its members among several districts." *Id.* at 414. The Act further "forbids 'packing' minority voting strength into, for example, a single district, where the minority population might otherwise have constituted a majority in more than one electoral district." *Id.* at 414-415, and cases cited.

Since the passage of art. 101 in 1974, two of the Legislature's four redistricting plans for the House of Representatives have been the subject of Voting Rights Act challenges. The 1987 plan was challenged on art. 101, Federal equal protection and Voting Rights Act grounds. *Black Political Task Force* v. *Connolly, supra.* The court did not reach the Voting Rights Act issue, deciding the case on the basis that the statute failed to meet art. 101's population equality requirement and Federal equal protection standards. *Id.* at 111 n.1. In response to that decision, the Legislature enacted a new plan in 1988. *Brookline* v. *Secretary of the Commonwealth,* 417 Mass. 406, 411 (1993). In 1990, the people approved art. 117, which replaced the State census with the Federal census as the basis for drawing districts. *Id.* In light of the 1990 Federal census figures, the Black Political Task Force and the Massachusetts Republican Committee brought suit challenging the 1988 plan on the basis of the Federal equal protection requirements and the Voting Rights Act. *Id.* at 411-412. A majority of the Federal three-judge court denied an injunction to redraw the districts because it concluded that the redistricting process for the 1994 election was proceeding on schedule and that the balance of the equities did not weigh in favor of disrupting the elections. See *id.* at 412. The Federal court, however, assumed that the evidence showed a "sufficient basis for reconstituting a number of districts so as to give them a greater minority population." *Id.,* quoting Black Political Task Force *vs.* Connolly, U.S. Dist. Ct. Civ. Nos. 91-12750-H, 91-12751-H (D. Mass. Feb. 10, 1992). The dissenting judge wrote that he would issue an injunction, as the plaintiffs had shown a

likelihood of success on the merits of their Voting Rights Act claim. Black Political Task Force *vs.* Connolly, U.S. Dist. Ct. Nos. 91-12750-H, 91-12751-H (D. Mass. Feb. 10, 1992) (Pettine, J., dissenting).[4] See *Brookline* v. *Secretary of the Commonwealth, supra* at 412 n.5.

3. *Relevant characteristics of the 2001 redistricting plan.* In regard to the population equality requirement, the 2000 Federal census provides that Massachusetts' population was 6,349,097. This figure, divided by 160 (the number of representative districts established by art. 101), yields an ideal district population figure of 39,682. The redistricting statute has a maximum population deviation of 9.68 per cent, within the ten per cent Federal equal protection limit. The average population deviation, computed by averaging the percentage each district deviates from the ideal district population figure is 2.454 per cent.

Concerning territorial integrity, 116 of the districts under the redistricting statute include territory in more than one city or town. Of those 116 districts, thirty-eight include territory in more than one county. Cambridge is divided among six districts: one all-Cambridge district; a district shared with Somerville but dominated by Cambridge; and four other districts shared by portions of Cambridge and portions of Arlington, Belmont, Watertown, and Boston. Because Cambridge has a population of 101,355, the Legislature would, at a minimum, have to divide it among at least three districts to meet population equality requirements.

4. *The plaintiffs' alternative plans.* The plaintiffs have proffered three alternative plans to the redistricting statute, none of which was ever presented to the Legislature.[5] The first alternative plan divides Cambridge among three districts, as opposed to the six districts contemplated by the redistricting statute. It achieves this objective without significantly increasing the

---

[4]On two occasions, Voting Rights Act challenges have also been brought to challenge districts in local elections. *Latino Political Action Comm., Inc.* v. *Boston,* 609 F. Supp. 739 (D. Mass. 1985), aff'd, 784 F.2d 409 (1st Cir. 1986) (city council and school committee districts); *Black Voters* v. *McDonough,* 412 F. Supp. 165 (D. Mass. 1976), aff'd, 565 F.2d 1 (1st Cir. 1977) (school committee at-large elections).

[5]Although the plaintiffs' second and third alternative plans were not included in the parties' statement of agreed facts, the defendant has not objected to the plaintiffs' presentation of the second and third alternative plans.

maximum or average population inequality among any other districts, as the maximum population deviation for this plan would be 9.41 per cent and the average population deviation would be 2.456 per cent. However, the plaintiffs conceded that this plan eliminated the Seventh Suffolk district as an effective majority-minority district.[6] The second alternative plan sought to eliminate any potential Voting Rights Act problem by maintaining the Seventh Suffolk as an effective majority-minority district, but has a slightly higher maximum population deviation than the redistricting statute (9.93 per cent). The third alternative plan, submitted only three days prior to oral argument before this court, has the territorial integrity (it divides Cambridge among three districts) and population equality (it has a maximum population deviation of 9.60 per cent and an average population deviation of 2.442 per cent) advantages of the first alternative plan, but retains the Seventh Suffolk as an effective majority-minority district. In all other respects, the plaintiffs argue that the third alternative plan has the same art. 101 territorial integrity advantages as the first and second alternative plans. Specifically, it has the same district configurations in Cambridge, Lexington, Arlington, and the rest of Middlesex County. It does not reduce the number of districts wholly or partially in Brookline or in Norfolk County. Further, both the total population deviation and the average population deviation are lower in the third alternative plan than in St. 2001, c. 125.

5. *Discussion.* The plaintiffs argue that the redistricting plan embodied in St. 2001, c. 125, violates art. 101's directive that the Legislature keep intact cities, towns, and counties "as nearly as may be." Art. 101, § 1. The plaintiffs have offered three alternative plans, all of which, they claim, more closely meet the territorial integrity requirement of art. 101 without sacrificing art. 101's competing goal of population equality. We conclude that the Legislature's plan was within the parameters of art. 101, and thus we shall not disturb it.

As discussed above, the State and Federal Constitutions and

_____

[6]An effective majority-minority district is one in which black voters compose a larger percentage of the voting age population than any other racial group, but nevertheless do not constitute greater than fifty per cent of the population of that district. See generally *Johnson* v. *DeGrandy*, 512 U.S. 997, 1017 (1994).

Federal statutory law impose a number of requirements on the redistricting process. It would be impossible for the Legislature to satisfy all of the requirements perfectly in any one redistricting plan because, at times, the various requirements inevitably conflict. To divide the State into districts as equal in population "as nearly as may be" cannot be done without combining parts of cities, towns and counties. Even the alternative plans leave 112 districts with territory in more than one city or town. The two directives create a conflict that cannot be perfectly harmonized in every case and is left primarily to the Legislature to resolve.

The Legislature must also account for Federal constraints on the redistricting process imposed by the Fourteenth Amendment's equal protection clause and the Voting Rights Act. These requirements are in addition to those imposed by Massachusetts law, and any Legislature that failed to account for these Federal requirements "could fairly be said to have shirked its responsibility." *Brookline* v. *Secretary of the Commonwealth*, 417 Mass. 406, 418 (1994).

Because the redistricting process involves the consideration of these competing factors, the clause requiring the Legislature to avoid the division of cities, towns, and counties "as nearly as may be" cannot be interpreted to require that the Legislature adopt the plan with the absolute minimum number of districts that cross county, town, or city lines. The Legislature must adopt a plan for the entire State, and the divisions of a particular city, town, or county may be reasonable in light of the need to meet Federal and State requirements for the State as a whole. Thus, the phrase "as nearly as may be" requires the Legislature to adopt the plan with the fewest divisions, while taking into consideration all the other relevant factors. The Massachusetts Constitution does not require the Legislature simply to devise mathematically the plan with the least division of cities, towns, or counties and then adopt that plan; its determination necessarily involves the use of discretion and, as in all legislation, compromise on the part of the Legislature. *Merriam* v. *Secretary of the Commonwealth*, 375 Mass. 246, 258 (1978).

We have traditionally accorded the Legislature substantial deference in determining how to strike the proper balance

among the various directives and goals laid out by State and Federal law. *Brookline* v. *Secretary of the Commonwealth, supra* at 418, quoting *Growe* v. *Emison,* 507 U.S. 25, 34 (1993). ("Reapportionment . . . is primarily the duty and responsibility of the State through its legislative or other body . . ."). The issue we must resolve is not whether a better plan exists, but "whether, once these various mandates and considerations are taken into account, the Legislature has unduly departed from the directive in art. 101 on which the plaintiffs rely." *Brookline* v. *Secretary of the Commonwealth, supra* at 419. The plaintiffs bear the burden of showing that the Legislature's plan violates art. 101 "beyond reasonable doubt." *Attorney Gen.* v. *Secretary of the Commonwealth,* 306 Mass. 25, 30 (1940), quoting *Perkins* v. *Westwood,* 226 Mass. 268, 271 (1917). As long as the Legislature took "reasonable efforts to conform to the requirements of the Constitution," we will uphold the Legislature's redistricting plan. *Brookline* v. *Secretary of the Commonwealth, supra* at 420, quoting *Brophy* v. *Suffolk County Apportionment Comm'rs,* 225 Mass. 124, 126 (1916). The Legislature must consider each of the Federal and State requirements, but is not required to demonstrate explicitly how the plan meets each of these requirements.

Although the plaintiffs have presented three alternatives to the redistricting statute, whether any of these plans is potentially superior tó the redistricting statute is not determinative of the question we must decide. See *Brookline* v. *Secretary of the Commonwealth, supra* at 421. We consider the alternative plans as evidence that a plan with fewer divisions of Cambridge was possible. As long as the Legislature had a reasonable justification for drawing the districts as it did, we shall not question the Legislature's determination by comparing its selected plan to alternative plans that were not before it. The Constitution does not require that the Legislature adopt the best plan "that any ingenious mind can devise." *Attorney Gen.* v. *Secretary of the Commonwealth,* 306 Mass. 25, 33 (1940). If we required such a determination, any redistricting plan adopted by the Legislature would be subject to endless attack by those who are later able to devise what they contend is a superior plan that may indeed more closely approximate the constitutional commands. The

plaintiffs have formulated three alternative plans, each subsequent plan allegedly containing certain advantages over the previous proposed alternative plan. These repeated attempts to formulate a plan that best meets all Federal and State law requirements demonstrate the difficulty of devising such a plan and highlight the fact that it may always be possible to improve an existing plan in hindsight by focusing only on one city or town. Our Constitution vests the Legislature with the responsibility for redistricting. *Merriam* v. *Secretary of the Commonwealth, supra* at 263. As long as the Legislature's actions are reasonably justified by an attempt to conform with the criteria laid out by Federal and State law, and do not clearly violate these laws, we shall not usurp the Legislature's role by selecting among competing plans.

In *Brookline* v. *Secretary of the Commonwealth,* 417 Mass. 406 (1994), we set forth a two-part inquiry for determining whether a redistricting plan meets the requirements of art. 101. To demonstrate that the Legislature's choice of plan was an unreasonable violation of art. 101's territorial integrity directive, a plaintiff must first demonstrate that "the constitutional requirement of equal representation 'can be achieved [and other pertinent considerations satisfied] without dividing a municipality and [that] an entire municipality can be kept in one district without a "ripple effect" on other defined districts.' " *Id.* at 420-421, quoting *Merriam* v. *Secretary of the Commonwealth,* 375 Mass. 246, 264 (1978) (Wilkins, J., dissenting). A "ripple effect" is created when fewer divisions of the town in question result in the increased division of neighboring towns and communities. *Brookline* v. *Secretary of the Commonwealth, supra* at 422 (concluding that alternative plan created "ripple effect" where it resulted in the additional division of neighboring towns). If the plaintiffs meet this burden, the plan is unconstitutional if the Legislature's plan is not supported by a reason "justifying the division." *Id.* at 421, quoting *Merriam* v. *Secretary of the Commonwealth, supra* (Wilkins, J., dissenting). However, the Legislature's proffered reason is entitled to a "high degree of deference." *Brookline* v. *Secretary of the Commonwealth, supra.*

In this case, the plaintiffs arguably have met their burden on

the first part of the inquiry. All three of the alternative plans presented by the plaintiffs create fewer districts within Cambridge without resulting in any "ripple effect" of additional divisions in neighboring cities or towns. Further, two of the three alternative plans achieve this objective without significantly increasing the maximum or average deviation in the population equality of the Legislature's plan. In this sense, the plaintiffs can be said to have presented a "superior" plan.

As to the second part of the inquiry, a plaintiff must demonstrate that the Legislature had no reasonable justification for selecting a redistricting plan that creates more divisions of cities, towns, or counties. We do not interpret *Brookline* v. *Secretary of the Commonwealth, supra,* as shifting the burden to the Legislature to defend its plan. Our previous cases establish that a plaintiff bears the burden of showing the unconstitutionality of a statute beyond a reasonable doubt. *Merriam* v. *Secretary of the Commonwealth, supra* at 254; *Attorney Gen.* v. *Secretary of the Commonwealth, supra* at 30; *Attorney Gen.* v. *Pelletier,* 240 Mass. 264, 299 (1922). *Brookline* v. *Secretary of the Commonwealth, supra,* does not alter this principle, which has been consistently followed for more than a century. See *Merriam* v. *Secretary of the Commonwealth, supra* at 254, and cases cited.

However, the two directives of art. 101 are not the only considerations the Legislature must take into account; it must also give due regard to the Federal Voting Rights Act. The population equality and territorial integrity requirements necessarily conflict, and the Legislature has the discretion to determine the "extent to which either of these requirements shall yield to the other." *Merriam* v. *Secretary of the Commonwealth, supra* at 260, quoting *Attorney Gen.* v. *Secretary of the Commonwealth, supra* at 31-34. In this case, the redistricting statute does not comply any better with the population equality requirement of art. 101 than two of the three alternative plans presented by the plaintiffs. Thus, the redistricting statute is not justifiable as an attempt to achieve more closely art. 101's goal of population equality.

Nor can the plaintiffs meet their burden where additional divisions result from legitimate efforts to meet the requirements

of the Voting Rights Act. Here, the Secretary argues that the Legislature's decision is justified by efforts to avoid a Voting Rights Act challenge to the plan. The plaintiffs argue that there is no evidence that the Legislature actually considered the Voting Rights Act in shaping its redistricting plan. In *Brookline* v. *Secretary of the Commonwealth, supra* at 422 n.14, we noted that a committee report can indicate the "constitutional and legal factors that influenced the formation" of a redistricting plan. Although the committee report on the redistricting statute does not mention the Voting Rights Act specifically, it does discuss the impact of redistricting on minority representation. Report of Joint Special Committee on the Redistricting and Reapportionment, 2001 House Doc. No. 4700 at 4-6. The committee specifically noted that "[a] number of districts in Boston and Springfield contain a sizable majority comprising people of color." *Id.* at 5. The report also asserted that the district configuration in the redistricting statute "positions minority people to have a serious influence over the political process, which they might not otherwise have." *Id.* at 6. These statements demonstrate that maintaining adequate minority representation was, at the very least, one of many considerations the Legislature took into account while developing its redistricting plan in conformity with the Federal statutory mandate contained in the Voting Rights Act.

The Legislature's plan retains the Seventh Suffolk district as an effective majority-minority district. See note 6, *supra.* It is irrelevant whether the destruction of the Seventh Suffolk as an effective majority-minority district would have resulted in an actual Voting Rights Act violation. Absent evidence that the Legislature's plan is not justified by the proper considerations or related to a permissible objective, we will not invalidate a redistricting plan. The plaintiffs, in this case, have failed to meet their burden of proving that the redistricting statute was not a reasonable effort to meet the requirements of the Voting Rights Act and thereby avoid the protracted Voting Rights Act litigation that had attended prior redistricting plans. The parties' complex and lengthy briefs about the impact on minority voting of both the redistricting statute and the alternative plans demonstrate that a potential Voting Rights Act challenge was far

from foreclosed. In light of the fact that two of the four redistricting plans enacted since the passage of art. 101 had been challenged on the basis of the Voting Rights Act, the Legislature had a legitimate interest in avoiding the very real possibility of litigation.[7]

The Legislature is in the best position to make political judgments regarding the effect of a new redistricting plan. In this case, the Legislature considered whether a reduction in the black voting age population in the Seventh Suffolk would dilute minority influence in that district. Although it is possible, as the plaintiffs argue, that this reduction would not have diminished minority influence or lead to the unseating of a minority incumbent, the legislators, elected by the citizens of the State, are particularly qualified to assess the political environment of the districts they serve. A redistricting plan will have impacts on the districts, and the legislators are in a superior position to assess the nature and extent of these impacts. In these circumstances, it is important to accord the Legislature substantial deference. We conclude that, in this case, the Legislature could reasonably have considered Voting Rights Act implications in adopting its redistricting plan.

6. *Conclusion.* Judgment is to be entered on the docket of the Supreme Judicial Court for the Commonwealth declaring that the redistricting plan in St. 2001, c. 125, § 1, does not violate art. 101, and otherwise denying the relief requested by the plaintiffs.

*So ordered.*

---

[7]Without commenting on the merits, we note that the current redistricting statute is already the subject of yet another Voting Rights Act challenge in the Federal District Court. Camacho *vs.* Finneran, U.S. Dist. Ct., Civil Action No. 2002-10428-DPW, filed March 12, 2002.