*A. J. Cote, pro se.*

———

PATRICK J. BROPHY & another *vs.* SUFFOLK COUNTY APPORTION-
MENT COMMISSIONERS.

JOHN P. MAHONEY *vs.* SAME.

TILTON S. BELL *vs.* SAME.

JAMES BUCHANAN, JR., *vs.* SAME.

DANIEL J. KILEY & others *vs.* SAME.

H. RAYMOND CARTER *vs.* SAME.

Suffolk. October 18, 1916. — October 26, 1916.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Constitutional Law,* Apportionment of representation. *House of Representatives. Suffolk County Apportionment Commissioners.*

Suffolk County comprises the city of Boston, divided into twenty-six wards, the cities of Chelsea and Revere, each divided into five wards, and the town of Revere. The unit of representation for the county is 3,258 voters. The number of voters in the smallest ward in Boston exceeds this unit by almost 700. Under art. 21 of the Amendments to the Constitution each representative district must consist of contiguous territory, "no town or ward of a city shall be divided therefor" and no district "shall be entitled to elect more than three representatives." In the division into districts and the apportionment of representation made by the third report of the Suffolk County apportionment commissioners elected under St. 1913, c. 835, § 390, the most serious inequality shown on the face of the report was between a district of 4,854 voters, which was given two representatives, being one for each 2,427 voters or 831 less than the unit of representation, and a district of 4,282 voters, which was given only one representative, making an excess of 1,024 voters above the unit. To the cities of Chelsea and Revere three representatives were assigned, and the aggregate number of legal voters in the two cities lacked only 929 of being four times the unit of representation. Two other districts, each with three representatives, contained respectively 11,510 and 11,262 voters, or 3,836 and 3,754 voters for each rep-

resentative. It was *held*, that, while the division and apportionment made by the report were not ideal, the question was not whether in the opinion of this court there could have been a closer approximation to equality, because the work was to be done by the commissioners, whose duty it was to exercise their sound judgment and practical wisdom in selecting the best among the various possible methods for forming the districts, and that the inequalities of voting power between the different districts, as created by the division and apportionment made by the report, were not so great, and the means of avoiding them were not so clear, as to compel this court to decide that there was a grave and unnecessary inequality between the different districts in violation of the requirements of the Constitution.

Rugg, C. J. The third report of the apportionment commissioners elected in accordance with St. 1913, c. 835, § 390, attempting to divide Suffolk County into representative districts, and to apportion among them the representatives assigned to that county, is attacked by these proceedings * as contrary to art. 21 of the Amendments to the Constitution.

The general principles by which such an apportionment must be made in order to conform to that amendment to the Constitution have been stated at length in the two recent decisions in which it has been necessary to declare void the two earlier reports of these commissioners. *Attorney General* v. *Apportionment Commissioners*, 224 Mass. 598. *Donovan* v. *Apportionment Commissioners, ante*, 55. See, also, *McGlue* v. *County Commissioners, ante*, 59. These principles need not be repeated. It is enough to say that the mandate of the Constitution is that the division into representative districts must be made so as to apportion the representatives assigned to Suffolk County "equally, as nearly as may be, according to the relative number of legal voters in the several districts." Equal representation in the Legislature in proportion to the number of legal voters is fundamental in a true representative government. The great purpose of the twenty-first amendment to the Constitution is to establish and to preserve in every apportionment equality among all legal voters in their voting power in the election of members of the House of Represent-

---

* Six petitions for writs of mandamus brought by legal voters residing in five of the legislative districts of that county. The cases were heard by *De Courcy*, J., who found the facts to be as set forth in the petitions, and at the request of all the parties reported the cases for determination by the full court.

atives, so far as this is reasonably practicable in view of the other constitutional limitations as to the formation of representative districts, namely, contiguity of territory, indivisibility of towns and wards of cities, and the assignment of not more than three representatives to one district. The present report must be examined to ascertain whether on its face there is a plain evasion of this constitutional requirement in the light of all the attendant conditions.

Suffolk County comprises the cities of Boston, Chelsea and Revere and the town of Winthrop. Boston is divided into twenty-six wards, the number of legal voters in which varies from 3,913 in the smallest to 10,714 in the largest. Each of the other two cities is divided into five wards, with legal voters ranging from 500 to 2,079. Winthrop has 3,445 voters. The unit of representation or ratio of voters to one representative for the county is 3,258. The problem of dividing Suffolk County into districts and apportioning among them the fifty-four representatives assigned to it in some respects is peculiarly simple when approached from the standpoint of the requirements of the Constitution. But there are inherent difficulties in reaching equality of representation. The wards of Boston are large in numbers of legal voters, the smallest exceeding by almost 700 the representative unit. These wards cannot be subdivided. The districts must be composed of contiguous wards and town, and no more than three representatives can be assigned to one district.

The present report divides the county into twenty-seven districts. In ten of these, to which are allotted nineteen representatives, the variation from the representative unit is less than 300. In five more districts, to which are assigned thirteen representatives, the variation is more than 300 and less than 400. There are eight other districts, to which are assigned seventeen representatives, where the variation is between 400 and 700. In the remaining four districts, with five representatives, the variations are 790, 831, 868 and 1024. Some of these inequalities are not insignificant. Such disproportion ought to be avoided if reasonably practicable. But inequalities alone are not enough to make void an apportionment. The inequalities must be unnecessary and incompatible with reasonable effort to conform to the requirements of the Constitution.

The most serious inequality shown on the face of the present report is between District 3, conterminous with Ward 3 of Boston, which, with 4,854 voters, is given two representatives, being one for 2,427 voters or 831 less than the unit of representation of 3,258, and District 25, conterminous with Ward 25 of Boston, with 4,282 voters, to which one representative is assigned, being an excess of 1,024 above the unit. This inequality could have been avoided only by combinations of these two wards with others into larger districts, and apportioning to them different numbers of representatives. The single practicable combination of Ward 3 is with Ward 4. The latter ward, having 5,387 voters, is by the report made District 4, to which are assigned two representatives, or one representative for 2,693 voters, or 565 less than the unit of representation. Some of the excess representation given to Districts 3 and 4, which are contiguous, might be eliminated by combining them into a single district with three representatives. But the discrimination against District 25 would by combination with District 26, which is Ward 26 of Boston, the only practicable combination, be changed into almost as great a discrimination in favor of the new district. District 26, with 3,913 voters and one representative, has 655 more than the unit of representation. The discrimination against the two districts in the aggregate is 1,679. If Wards 25 and 26 were made one district with three representatives, there would be 8,195 voters, or a discrimination in favor of the district as a whole of 1,579.

Complaint is made, also, of the apportionment of three representatives to the cities of Chelsea and Revere, in place of four representatives assigned to them under the earlier reports of these commissioners. The aggregate number of legal voters in these two cities lacks 929 of being four times the unit of representation. Nevertheless, there is strong argument in favor of a division of these two cities so as to assign to them four representatives in all. But the ward lines and legal voters in the several wards in these cities are such as to make impossible a division into four separate districts with one representative each, without greater appearance of inequality in some respects than is disclosed in the present report. There are obvious objections which may be urged against combinations of wards into double or triple districts. The avoidance of them has something in its favor.

Criticism is made of the apportionment as to Districts 19 and 22. These districts contain respectively 11,510 and 11,262 voters, or 3,836 and 3,754 voters for each representative. While these disparities are not inconsiderable, they are not so large and the means for correcting them are not so obvious as to leave no doubt that there has been a violation of the Constitution, in view of the number of legal voters in the territorial units which must be used without division in forming the districts and making the apportionment.

The present report as an entirety avoids in large part the manifest discriminations disclosed in the earlier reports. Some of the disparities of the present report, stated either in absolute figures or in percentages, are relatively large. Well reasoned and sound decisions are to be found holding, upon the facts there presented, that disparities measured in terms of percentages as great as some of those here disclosed were enough to render such an apportionment a nullity. See *Brooks* v. *State,* 162 Ind. 568; *Sherrill* v. *O'Brien,* 188 N. Y. 185. But in these instances the ratio of voters or inhabitants to representatives was larger and the territorial units usable without division were proportionately smaller than in the case at bar.

The division and apportionment of the present report are not ideal. Doubtless a closer approximation to equality might have been made. But the Constitution has placed the duty of making the division and apportionment upon the commissioners and not upon the court. There is room for some diversity of honest opinion in selecting among the various possible methods the best one for forming the districts. Sagacity is demanded in reaching a right determination. The division and apportionment is not a mere example in arithmetic. It involves the exercise of sound judgment and practical wisdom. When the report disregards a reasonable application of sound judgment, acting within the positive command for equality of voting power contained in the amendment to the Constitution, then it is a nullity. Every reasonable presumption must be made in favor of the report of the commissioners. The function of the court is not to review or revise the exercise of official judgment within its legitimate limits, but only to declare void a division and apportionment so vicious in its nature as to transcend the constitutional power of the commissioners. Some-

thing must be left to the commissioners, unless in substance the division and apportionment are to be made at last by the court. If this apportionment on its face does not indicate a manifest abuse of power in ignoring the mandate of the Constitution, or an evasion or direct infraction of the principles stated in our earlier decisions, the court cannot interfere to set it aside. *In re Baird,* 142 N. Y. 523, 529. With some hesitation we are brought to the conclusion that the inequalities of voting power between the several districts, as shown by the present report, are not quite so great and the means for avoiding them not quite so clear as to leave fair-minded men in no reasonable doubt that there is a grave and unnecessary inequality between the different districts, and to make imperative the conclusion that the requirements of the Constitution have been violated.

In each case let the entry be

*Petition dismissed.*

*N. Matthews & F. G. Goodale,* for the petitioners Kiley, McVey and Campbell.

*Lee M. Friedman,* (*G. A. Ham* with him,) for the petitioner Bell.

*J. J. Leonard,* for the petitioner Mahoney.

*C. F. Eldredge,* for the petitioners Brophy and Ahern, and *J. M. Levenson,* for the petitioners Buchanan and Carter, also were in attendance.

*W. A. Buie,* for the respondents.