EMMA G. NEWMAN & others *vs.* COMMISSIONERS TO APPORTION SUFFOLK COUNTY & another.

Suffolk.    October 8, 1968. — October 15, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Constitutional Law,* Apportionment of legislators, Equal protection of laws. *General Court.*

Facts agreed in a mandamus proceeding did not establish that the commissioners appointed to apportion Suffolk County into representative districts pursuant to St. 1967, c. 877, exceeded their discretionary powers under the appropriate constitutional and statutory provisions, or that there was "invidious discrimination against any person or group," in establishing as a representative district, with two representatives, two wards in Boston, each of which had a population very close to the "optimum population per representative" and, it was contended, could have properly been made a separate, one member district.

PETITION for a writ of mandamus filed in the Supreme Judicial Court for the county of Suffolk on April 9, 1968.

The case was reserved and reported without decision by *Cutter, J.*

*Herbert H. Hershfang* for the petitioners.

*Charles H. McGlue* for the respondent Commissioners to Apportion Suffolk County.

*Mark L. Cohen,* Deputy Assistant Attorney General, for the respondent Secretary of the Commonwealth.

*Paul T. Smith & Manuel Katz,* for the Speaker of the House of Representatives, amicus curiae, submitted a brief.

CUTTER, J.   The petitioners are five registered voters of Ward 4 in Boston.   Two are Democrats and three are Republicans.   They include members of the elected Republican and Democratic ward committees.   They seek in the county court (see St. 1967, c. 877, § 6) a writ of mandamus (a) to command the respondent commissioners to apportion Suffolk County into representative districts (the commissioners[1]) to make Ward 4 a separate district with one representative (instead of combining Ward 4 with Ward 10 as a district with two representatives), and (b) to direct the Secretary of the Commonwealth (the Secretary) to refrain from putting into effect the district designations fixed by the commissioners.   A single justice, upon a statement of agreed facts, reserved and reported the case without decision for the determination of the full court.

The commissioners, by St. 1967, c. 877, were charged with assigning (upon the basis of the 1965 State Decennial Census) all of Suffolk County to representative districts and distributing a total of thirty-two representatives among the districts to be designated.   The "optimum population per representative" according to the census is 22,063.   The commissioners established the districts shown in the margin.[2]

---

[1] The commissioners include five Democrats and one Republican.   The record does not disclose the party affiliations of the other three commissioners.

[2] *Suffolk Representative District Number* | *Wards in Boston* | *Population* | *Number of Representatives* | *Population per Representative*
---|---|---|---|---
1 | 1(East Boston) | 39,792 | 2 | 19,896
2 | 2(Charlestown) | 16,381 | 1 | 16,381
3 | 3 | 20,761 | 1 | 20,761
4 | 4* and 10** | 43,352 | 2 | 21,676
5 | 5 | 22,715 | 1 | 22,715
6 | 6 and 7 | 46,688 | 2 | 23,344
7 | 8, 9, and 12 | 54,034 | 2 | 27,017

The component wards of each multiple representative district in Boston are geographically contiguous.

For at least thirty-five years prior to 1963, Ward 4 had been a separate representative district. Two Democrats and twelve Republicans were elected from Ward 4 in the seven elections from 1950 to 1962, in all but one instance by close votes. For several years prior to 1963, Ward 10 had been combined with Ward 11 to form the Tenth Suffolk District. From 1950 to 1962 that district had elected only Democrats as representatives, all by substantial margins.

In 1963, a special commission (St. 1963, c. 666) conducted a reapportionment of representative districts for Suffolk County. Four of five members of that special commission were Democrats. Ward 4, theretofore a double representative district, was joined with Ward 10 to form a triple representative district. Each of the three Boston wards which in 1962 had elected a Republican representative, was joined in 1963 with another ward to form a multi-representative district. In addition to the combination of Wards 4 and 10, Ward 3 was then joined with Ward 5, and Ward 9 was combined with Ward 12.

In 1964 and 1966, the representatives elected from the new combined Fourth Suffolk District (Wards 4 and 10) were all Democrats, either elected by substantial margins or without Republican opposition. All persons elected were from Ward 10. None lived in Ward 4.

| 8 | 11 and 19 | 51,445 | 2 | 25,723 |
|---|---|---|---|---|
| 9 | 13 | 28,852 | 1 | 28,852 |
| 10 | 14 | 46,751 | 2 | 23,376 |
| 11 | 15 | 22,714 | 1 | 22,714 |
| 12 | 16 and 17 | 59,340 | 3 | 19,780 |
| 13 | 18 | 57,548 | 3 | 19,183 |
| 14 | 20 | 45,065 | 2 | 22,533 |
| 15 | 21 and 22 | 60,888 | 3 | 20,296 |
|  | *population 20,055 | | | |
|  | **population 23,297 | | | |
|  | *Areas outside Boston* | | | |
| 16 | Chelsea, Wards | | | |
|  | 1, 2, 4 and 5 | 19,919 | 1 | 19,919 |
| 17 | Revere complete | | | |
|  | and Chelsea | | | |
|  | Ward 3 | 49,573 | 2 | 24,787 |
| 18 | Winthrop complete | 20,398 | 1 | 20,398 |

As noted above, the combination of Ward 4 with Ward 10 was continued in 1968, when the present commissioners' report was filed. Because only thirty-two representatives were assigned to Suffolk County in 1968 (instead of forty as in 1963), the combined Fourth Suffolk District was in 1968 given only two representatives instead of three as in 1963.[3]

The petitioners disclaim any objection to (a) whatever population disparities may exist under the commissioners' 1968 report,[4] and also (b) the division of Boston into twenty-two wards. Accordingly, we do not consider these matters.

The petitioners' contentions are directed primarily to the commissioners' failure to establish Ward 4 as a separate district to elect a single representative. They point out that Ward 4 by itself has a population of 20,055, which is much more (and much closer to the "optimum" figure of 22,063) than the population (16,381) of the single representative Second Suffolk District (Charlestown) and about the same as that (20,761) of the Third Suffolk District (Ward 3), which also has a single representative. They contend that there was as much reason for setting up Ward 4 as a single-member district as for making Wards 2 and 3 single-member districts. If the commissioners had done so, Ward 10 (with a population of 23,297), as a single-representative district, would then have been closer to the "optimum" population of 22,063 than Wards 2 and 13 (fn. 2) and nearly as close as Ward 3.

Article 21 of the Articles of Amendment to the Constitution of the Commonwealth, as appearing in art. 71 of the Amendments, provides, among other things, that, after "the number of representatives to which each county shall be entitled" is determined by the general court and after the State Secretary has certified this number to the appropriate

---

[3] Ward 3, which in 1963 had been joined with Ward 5 in a two-representative district, was separated from Ward 5 in 1968. Each of these two wards became in 1968 a separate single-member district.

[4] As will be observed (fn. 2), the smallest population per representative is in the Second Suffolk District (Charlestown) with 16,381 persons electing one representative. The largest population per representative is in the Ninth Suffolk District (Ward 13) with 28,852 persons electing one representative.

county board, the "county commissioners . . . or, in lieu
thereof, such board of special commissioners in each county
as may for that purpose be provided by law, shall . . . as-
semble at a shire town of their respective counties, and pro-
ceed, as soon as may be, to divide the same into representa-
tive districts of *contiguous territory* and assign representatives
thereto, so *that each representative in such county will repre-
sent an equal number of legal voters, as nearly as may be;* and
such districts shall be so formed that no town containing
less than twelve thousand inhabitants according to said
census, *no precinct of any other town and no ward of a city
shall be divided therefor, nor shall any district be made which
shall be entitled to elect more than three representatives. . . .*
The districts in each county shall be numbered by the board
creating the same, and a description of each, with the num-
bers thereof and the number of legal voters therein, shall
be returned by the board" to specified officials (emphasis in
quoted language supplied).

In St. 1967, c. 877, § 1, it is stated to be the legislative
intent that representatives "shall be apportioned in a fair
and nondiscriminatory manner and that the districts shall
be so established that they will be as nearly equal in popula-
tion as is practicable." In the apportionment, there is to be
incorporated "the principle of the so-called 'one-man,
one-vote' standard laid down by the Supreme Court of the
United States in recent decisions." After discussion of cer-
tain special difficulties presented by the 1968 reapportion-
ment, § 1 provides "that although each district cannot pos-
sibly be drawn containing exactly the same number of
inhabitants, nevertheless any deviation from the population
of the perfect district shall be minimal and within reasonable
and constitutional bounds, so that all the inhabitants of
the commonwealth will be afforded equal protection of the
law *without any invidious discrimination against any person
or group*" (emphasis supplied).[5]

---

[5] Chapter 877, § 4, amended G. L. c. 57, § 5, with respect to the commis-
sioners to apportion Suffolk County. As amended, § 5 provided for dividing
the county "into representative districts of contiguous territory and . . .
[the assignment of] representatives thereto, so that each representative in

The petitioners rely in part upon somewhat general language in earlier decisions of this court. In *Attorney Gen.* v. *Suffolk County Apportionment Commrs.* 224 Mass. 598, this court set aside a palpably unfair attempted apportionment. In doing so, it was said (p. 606) that "it is the indubitable design of the Constitution to maintain" what the opinion referred to as "equality of influence in shaping legislation." Nevertheless, this court recognized that absolute equality of representation is not required (p. 604), that complexities may be created by necessary adherence to town and ward lines and other requirements, and that (p. 606) "[a] wide discretion must of necessity be exercised by the commissioners." It was stated (p. 607), that the "court would be slow to set aside an apportionment which appeared by any exercise of sound discretion to have followed the requirements of the Constitution and to be an *approximation* to equality" (emphasis supplied).

In *Brophy* v. *Suffolk County Apportionment Commrs.* 225 Mass. 124, 127, the opinion mentioned the existence of "obvious objections which may be urged against combinations of wards into double or triple districts." Reference to such objections was made again in *Graham* v. *Special Commrs. of Suffolk County,* 306 Mass. 237, 246–248. In *Vigneault* v. *Secretary of the Commonwealth, ante,* 362, 366, it was suggested that following existing political subdivision lines (as was done in the circumstances there considered) may "restrict the possibility of partisan gerrymandering." See *Reynolds* v. *Sims,* 377 U. S. 533, 578–579.

In this Commonwealth, the creation of two or three-member districts has not been held to be a violation of con-

---

such county will represent" as nearly as may be "an equal number of inhabitants, according to the [1965 State] census," subject to the requirement that "such districts shall be so formed that no town containing less than twelve thousand inhabitants according to said census, no precinct of any other town and no ward of a city shall be divided," and no district shall be so formed that it "shall be entitled to elect more than three representatives." This court by c. 877, § 6, was given "jurisdiction of any petition for a writ of mandamus relative to the division of a county into representative districts and the assignment of representatives thereto under" G. L. c. 57, § 5, as amended by c. 877, § 4.

stitutional or statutory standards, so long as there has been compliance with other applicable requirements. Indeed, the petitioners recognize that the Massachusetts constitutional requirements (of following "existing ward lines and population standards")[6] may make necessary the use of multi-member districts in some circumstances (e.g. Ward 18 of Boston with a population of 57,543). See *Avery* v. *Midland County,* 390 U. S. 474, 484–486. They bring to our attention, however, cases in other jurisdictions in which there has been discussion of the possibility that multi-member districts will be employed to effect unconstitutional discrimination. See *Kruidenier* v. *McCulloch,* 258 Iowa, 1121, 1135 ("A legislative scheme which creates single-member districts and multi-member districts in an arbitrary manner would be objectionable" and "might be the result of gerrymandering . . . and, in that event . . . arbitrary and capricious"); *Jones* v. *Falcey,* 48 N. J. 25, 33–34; *Butcher* v. *Bloom,* 415 Pa. 438, 467–468. The Supreme Court of the United States, on the other hand, has not struck down, as such, any comparable multi-member district. See e.g. *Fortson* v. *Dorsey,* 379 U. S. 433, 436–439; *Burns* v. *Richardson,* 384 U. S. 73, 88–89; *Kilgarlin* v. *Hill,* 386 U. S. 120, 125, fn. 3. See also *Lucas* v. *Colorado Gen. Assembly,* 377 U. S. 713, 731–732; *WMCA, Inc.* v. *Lomenzo,* 382 U. S. 4 (affirming 238 F. Supp. 916, 926–927, S. D. N. Y.); *Avery* v. *Midland County,* 390 U. S. 474, 484–486; *Mann* v. *Davis,* 245 F. Supp. 241, 244–246 (E. D. Va.) affd. per cur. sub nom. *Burnette* v. *Davis,* 382 U. S. 42; *Sincock* v. *Gately,* 262 F. Supp. 739, 828–833 (D. Del.); Banzhaf, Multi-Member Electoral Districts 75 Yale L. J. 1309, 1335–1337; note, 79 Harv. L. Rev. 1228, 1258–1261; note, 36 Geo. Wash. L. Rev. 144.

The Massachusetts constitutional and statutory provisions already mentioned and the decisions of this court have

---

[6] The petitioners disclaim any objection to the applicability or constitutionality (presumably under the Constitution of the United States) of the provisions of arts. 21 and 71 of the Amendments to the Constitution of the Commonwealth.

Newman v. Commissioners to Apportion Suffolk County.

permitted the assignment of not more than three representatives to one district, where that will facilitate redistricting. See *Graham* v. *Special Commrs. of Suffolk County*, 306 Mass. 237, 244–249. See also *Attorney Gen.* v. *Secretary of the Commonwealth*, 306 Mass. 25, 39. In the *Graham* case, in circumstances which seem materially more likely to result in numerical malapportionment than those now before us, the action of the commissioners (there, in failing to employ multi-member districts) was held (p. 249) not to be "so unreasonable as to invalidate the division and assignment made by them."

. We have weighed the petitioners' contentions in effect (1) that the commissioners, reasonably and without violation of any constitutional or statutory provision, could have made Ward 4 and Ward 10 separate one-member districts; (2) that Wards 2 and 3, although having a population comparable to that of Ward 4, were made separate single-member districts; and (3) that there is some inconsistency between the commissioners' action (fn. 3, *supra*) in separating Wards 3 and 5 (combined in 1963) and their 1968 action leaving Wards 4 and 10 together. These, however, are matters of a general type which our decisions, already cited, have treated as calling for the exercise of the commissioners' judgment.

The apportionment process is primarily a matter for legislative consideration. If the process has been carried out reasonably and without arbitrary conduct, this court has not interfered with the judgment of those entrusted with the task by the Legislature, and has recognized that the commissioners have a substantial range of discretion in matters such as here are criticised. Every reasonable presumption has been made in favor of the commissioners' report. See *Brophy* v. *Suffolk County Apportionment Commrs.* 225 Mass. 124, 128–129; *Attorney Gen.* v. *Secretary of the Commonwealth*, 306 Mass. 25, 34–35. We think the agreed facts insufficient to establish that the commissioners have exceeded their discretionary powers under the appropriate constitutional and statutory provisions, or that there has

been "invidious discrimination against any person or group." See St. 1967, c. 877, § 1.

The petition is to be dismissed.

*So ordered.*